**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LINCOLN NATIONAL REINSURANCE
COMPANY (BARBADOS) LIMITED

and

THE LINCOLN NATIONAL LIFE INSURANCE
COMPANY,

                                   Plaintiffs,

        -against-

SWISS RE LIFE & HEALTH AMERICA
HOLDING COMPANY,

                                   Defendant.

Case No. 07 cv 6731 (GBD) (FM)

(Oral Argument Requested)

**DEFENDANT SWISS RE LIFE & HEALTH AMERICA HOLDING COMPANY'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**STAY LITIGATION PENDING ARBITRATION**

STEPTOE & JOHNSON LLP
Michael Rips (MR-0810)
Lara E. Romansic (LR-9236)
Justin B. Perri (JP-6408)
750 Seventh Avenue, Suite 1900
New York, NY 10019
tel: (212) 506-3900
fax: (212) 506-3950

Of Counsel:

John L. Jacobus
Jon T. Neumann
Hillary C. Jarvis
Anthony A. Onorato
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
tel: (202) 429-3000
fax: (202) 429-3902

*Attorneys for Defendant*
*Swiss Re Life & Health America Holding Company*

August 20, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

EXHIBITS AND APPENDIX ........................................................................................... vi

I.     INTRODUCTION ................................................................................................... 1

II.    SUMMARY OF ARGUMENT ............................................................................... 1

III.   FACTUAL BACKGROUND .................................................................................. 2

IV.    ARGUMENT ........................................................................................................... 8

      A.    The Doctrine Of Equitable Estoppel Requires The Court To Dismiss Or, In The Alternative, Stay The Present Action In Favor Of The Arbitration In Barbados. ............................................................................................... 8

      B.    This Court Should Dismiss Or, In The Alternative, Stay The Present Action Pursuant To Its Inherent Power To Promote Judicial Economy Where The Issues In This Litigation Are Pending In Arbitration. ....................... 13

      C.    This Court Must Dismiss Or, In The Alternative, Stay The Present Action Pursuant To § 3 Of The Federal Arbitration Act. ................................................ 15

V.     CONCLUSION ...................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alemac Ins. Servs., Inc. v. Risk Transfer, Inc.,*
  No. 03 Civ. 1162 (WHP), 2003 U.S. Dist. LEXIS 26764 (S.D.N.Y. Aug. 26, 2003).............12

*Am. Shipping Line, Inc. v. Massan Shipping Indus.,*
  885 F. Supp. 499 (S.D.N.Y. 1995) ......................................................................................14

*Astra Oil Co., v. Rover Navigation, Ltd.,*
  344 F.3d 276 (2d Cir. 2003)..............................................................................................12

*Bercovitch v. Baldwin Sch., Inc.,*
  133 F.3d 141 (1st Cir. 1998), *aff'd,* 191 F.3d 8 (1999) .........................................................16

*Brass v. Am. Film Techs., Inc.,*
  987 F.2d 142 (2d Cir. 1993).............................................................................................1, 5

*Chase Mortgage Co.-West v. Bankers Trust Co.,*
  No. 00 CIV. 8150 (MBM), 2001 WL 547224 (S.D.N.Y. May 23, 2001) .............................11

*Choctaw Generation L.P. v. Am. Home Assurance Co.,*
  271 F.3d 403 (2d Cir. 2001)........................................................................................ *passim*

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,*
  252 F.3d 707 (4th Cir. 2001) ...........................................................................................16

*Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.,*
  979 F.2d 268 (2d Cir. 1992).............................................................................................7

*Citrus Mktg. Bd. v. J. Lauritzen A/S,*
  943 F.2d 220 (2d Cir. 1991).............................................................................................16

*Contec Corp. v. Remote Solution Co.,*
  398 F.3d 205 (2d Cir. 2005).............................................................................................12

*Cortec Indus. v. Sum Holding L.P.,*
  949 F.2d 42 (2d Cir. 1991)..............................................................................................1, 5

*DaPuzzo v. Globalvest Mgmt. Co.,*
  263 F. Supp. 2d 714 (S.D.N.Y. 2003).................................................................................13

*Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.,*
  891 F. Supp. 946 (S.D.N.Y. 1995) .....................................................................................14

*Goldstein v. Time Warner New York City Cable Group,*
   3 F. Supp. 2d 423 (S.D.N.Y. 1998) ...................................................................13

*Green v. Ameritech Corp.,*
   200 F.3d 967 (6th Cir. 2000) ...................................................................16

*HG Estate, LLC v. Corporacion Durango, S.A. de C.V.,*
   271 F. Supp. 2d 587 (S.D.N.Y. 2003)...................................................10, 11, 18

*IDS Life Ins. Co. v. SunAmerica, Inc.,*
   103 F.3d 524 (7th Cir. 1996) ...................................................................12

*In re Currency Conversion Fee Antitrust Litig.,*
   361 F. Supp. 2d 237 (S.D.N.Y. 2005)...............................................15, 16

*In re Quigley Co.,*
   361 B.R. 723 (Bankr. S.D.N.Y. 2007) .........................................13, 15

*Israel v. Chabra,*
   Nos. 04 Civ. 4599, 5859 (DC), 2005 WL 589400 (S.D.N.Y. Mar. 11, 2005).........................10

*James v. AT&T Corp.,*
   334 F. Supp. 2d 410 (S.D.N.Y. 2004)...................................................13

*Kramer v. Time Warner, Inc.,*
   937 F.2d 767 (2d Cir. 1991)...................................................................1

*Landis v. N. Am. Co.,*
   299 U.S. 248 (1936)...................................................................13

*McCann v. Royal Group, Inc.,*
   77 Fed. Appx. 552 (2d Cir. 2003) ...................................................................10

*McCowan v. Sears, Roebuck & Co.,*
   908 F.2d 1099 (2d Cir. 1990)...................................................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983)...................................................................8

*N. Assurance Co. v. Square D Co.,*
   201 F.3d 84 (2d Cir. 2000)...................................................................14

*N. Tankers Cyprus Ltd. v. Lexmar Corp.,*
   781 F. Supp. 289 (S.D.N.Y. 1992) ...................................................................8

*Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.,*
   339 F.2d 440 (2d Cir. 1964)...................................................................16

*New Phone Co. v. City of New York,*
    488 F.3d 96 (2d Cir. 2007)...................................................................................13

*Orange Chicken, L.L.C. v. Nambe Mills, Inc.,*
    No. 00 Civ. 4730 (AGS), 2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000) ...............................14

*Salim Oleochemicals v. M/V Shropshire,*
    278 F.3d 90 (2d Cir. 2002)...................................................................................16

*Shanferoke Coal & Supply Corp. v. Westchester Service Corp.,*
    70 F.2d 297 (2d Cir. 1934), *aff'd*, 293 U.S. 449 (1935), *overruled in part*, 485 U.S.
    271 (1988)...........................................................................................................8

*Smith/Enron Cogeneration L.P. v. Smith Cogeneration Int'l, Inc.,*
    198 F.3d 88 (2d Cir. 1999)...................................................................................12

*Sparling v. Hoffman Constr. Co.,*
    864 F.2d 635 (9th Cir. 1988) ...............................................................................16

*Spencer-Franklin v. Citigroup/Citibank N.A.,*
    No. 06 Civ. 3475 (GBD) (GWG), 2007 WL 521295 (S.D.N.Y. Feb. 21, 2007)....................16

*Spencer-Franklin v. Citigroup/Citibank N.A.,*
    No. 06 Civ. 3475 (GBD), 2007 WL 1052451 (S.D.N.Y. Apr. 5, 2007) ................................17

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,*
    10 F.3d 753 (11th Cir. 1993) ...............................................................................11

*Tyler v. City of New York,*
    No. 05CV3620 (SLT) (JO), 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006) ..................8

*United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.,*
    53 F. Supp. 2d 632 (S.D.N.Y. 1999)......................................................................7

*Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.,*
    372 F.3d 339 (5th Cir. 2004) ...............................................................................17

**STATUTES**

9 U.S.C. § 3 (2000) ................................................................................................ *passim*

## RULES

Fed. R. Civ. P. 4(c) ................................................................................................6

Fed R. Civ. P. 12(b) ...........................................................................................1, 8

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 8

Fed. R. Civ. P. 12(b)(3)......................................................................................1, 8

Fed. R. Civ. P. 12(b)(4)..........................................................................................6

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 8

## BOOKS AND ARTICLES

Barry R. Ostrager & Mary K. Vyskocil, *Modern Reinsurance Law and Practice* §§ 1.01, 3.01 (2d ed. 2000) ...............................................................................................2, 6

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (3d ed. 1998) .......................................................................................................................8

P. T. O'Neill & J.W. Woloniecki, *The Law of Reinsurance in England and Bermuda* 3, 267 (2004)....................................................................................................................2, 7

v

## EXHIBITS AND APPENDIX

Exhibit A to the Declaration of Lara E. Romansic:  Demand for Arbitration

Exhibit B to the Declaration of Lara E. Romansic:  Response to Demand for Arbitration

Exhibit C to the Declaration of Lara E. Romansic:  Treaty

Exhibit D to the Declaration of Lara E. Romansic:  June 2001 Treaty of Reinsurance

Exhibit E to the Declaration of Lara E. Romansic:  Put Agreement

Appendix:  Unreported cases

## I.    INTRODUCTION

Defendant Swiss Re Life & Health America Holding Company ("Swiss Re Holding")

respectfully moves this Court, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure,

including Fed. R. Civ. P. 12(b)(1), (3) and (6), to enter an order dismissing the Complaint of

Plaintiffs Lincoln National Reinsurance Company (Barbados) Ltd. ("Lincoln Barbados") and

Lincoln National Life Insurance Company ("Lincoln National"), or, in the alternative, staying all

claims pending the resolution of an arbitration currently being conducted in Barbados.  There is

ample legal authority to take this action,[1] and the facts and procedural history dictate that

outcome here.

## II.    SUMMARY OF ARGUMENT

Plaintiff, Lincoln Barbados, is attempting to use this Court to avoid a now-commenced

arbitration in which Lincoln Barbados has been challenged for breaching the underlying contract

that gives rise to the guaranty obligations Lincoln Barbados seeks to enforce against the

Defendant here.[2]  The disputes arising under the underlying contract must be adjudicated in the

arbitration before the guaranty obligations can be resolved.  That is because the guarantor here

(Defendant Swiss Re Holding) has the same rights and defenses that the underlying company in

the arbitration has against Lincoln Barbados in making payment in the first place.  Stated simply,

---

[1] As is demonstrated within, the Court has authority to take this action under the doctrine of equitable estoppel (*see* Part IV(A)); under its inherent powers (*see* Part IV(B)); and under the Federal Arbitration Act (*see* Part IV(C)).

[2] For the Court's convenience, a full copy of the Demand for Arbitration is attached as Exh. **A** to the Declaration of Lara E. Romansic ("Romansic Decl."). A copy of Lincoln Barbados's Response to the Demand for Arbitration is attached as Exh. **B** to the Romansic Decl. The Court may take judicial notice of the Demand for Arbitration and Response to the Demand for Arbitration on this motion. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("matters of which judicial notice may be taken" are properly considered by the court on a motion to dismiss) (*citing Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("courts routinely take judicial notice of documents filed in other courts").

the outcome here is completely dependent on rights and obligations which Lincoln Barbados itself agreed to resolve through arbitration. But Lincoln Barbados has attempted to fool this Court into believing that there is a controversy capable of being litigated before it by describing the guaranty not as contingent and subject to issues to be resolved in mandatory arbitration, but as "irrevocable" and "unconditional." (Compl. ¶ 6.) There is, of course, no ripe controversy here, but Lincoln Barbados hopes this litigation will inadvertently cause the Court to subvert the arbitration that Lincoln Barbados so very much wishes to avoid, despite its express agreement to arbitrate.

This tactic has been attempted before by other plaintiffs, and the Second Circuit has repeatedly rejected it. It has rejected such maneuvers on three independent grounds: (i) the doctrine of equitable estoppel; (ii) the inherent power of the courts to bar duplicative litigation, promote judicial economy, and avoid undermining arbitrations; and (iii) § 3 of the Federal Arbitration Act (the "FAA"). For each of these reasons, individually and collectively, this Court is required to dismiss or stay this litigation.

## III.    FACTUAL BACKGROUND

By way of background, this case is fundamentally about a reinsurance relationship between Lincoln Barbados and an Irish reinsurance company, Swiss Re Ireland. A reinsurance transaction is one in which an insurance company (or "cedent"), such as Lincoln Barbados, obtains separate insurance ("reinsurance") to cover its own expenditures resulting from payouts on its obligations.[3] The contracts by which risks are passed from an insurer to a reinsurer are

---

[3] "Reinsurance is 'simply an insurance policy issued to an insurer.'" Barry R. Ostrager & Mary K. Vyskocil, *Modern Reinsurance Law and Practice* § 1.01 (2d ed. 2000) (citation omitted); *see also* P. T. O'Neill & J.W. Woloniecki, *The Law of Reinsurance in England and Bermuda* 3 (2004) ("Reinsurance has been described simply as 'insuring insurers' . . . . The function and purpose of reinsurance may be readily understood. The insurer lays off part or all of the risks he has underwritten to a reinsurer.") (footnote omitted).

often called "treaties." In almost all cases, under reinsurance treaties, disputes about whether

reinsurance proceeds are due to a ceding company are subject to resolution through arbitration

before knowledgeable "market people" – fellow insurance executives – who are familiar with

this very specialized industry and the duties of disclosure and performance that prevail when the

risks are traded in the first instance.

The guaranty that is at the heart of this lawsuit arose from a larger transaction in which

Swiss Re Life & Health America Inc. ("Swiss Re Life"), one of the world's leading reinsurance

companies, agreed to acquire the disability income business conducted by Lincoln Barbados, in

which Lincoln Barbados itself acted, in the main, as the first-tier reinsurer to other companies.

The parties structured the transaction so that Lincoln Barbados would pass 100% of its disability

income insurance obligations to an Irish reinsurance company which was wholly owned by

Lincoln Barbados; Swiss Re Life would then acquire the shares of the Irish reinsurance company

(now known as Swiss Re Ireland), and hence the reinsurance business that had been ceded to the

Irish reinsurer by Lincoln Barbados.[4]

The transaction by which Swiss Re Life acquired the stock of the Irish reinsurance

company took the form of a Put Agreement, that is, an agreement that allows a company (here,

Lincoln Barbados) to tender or "put" the shares of one company (here, the Irish reinsurance

---

[4] In fact, there are two treaties of reinsurance referenced in this suit, one between Lincoln Barbados and the Irish reinsurance company (the "LNBAR Reinsurance Agreement," *see* Compl. ¶ 10, referred to herein as the "Treaty") (attached as Exh. **C** to the Romansic Decl.), and one between Lincoln National and the Irish reinsurance company (the "Lincoln Life Reinsurance Agreement," *see* Compl. ¶ 10, referred to herein as the "June 2001 Treaty of Reinsurance") (attached as Exh. **D** to the Romansic Decl.). As is noted within, *both* underlying reinsurance treaties, the performance of which is conditionally guaranteed by Swiss Re Holding, contain *identical* commitments to arbitrate. For ease of reference, and to facilitate the discussion of the legal issues here, we generally refer to the reinsurance treaty between Lincoln Barbados and the Irish reinsurer, as that is where the core dispute between the parties lies. The fact that the second treaty (between Lincoln National and the Irish entity) has yet to devolve into an arbitration does not alter the legal requirements that preclude commencement of litigation on controversies subject to arbitration. The existence of the second treaty simply confirms that Plaintiffs here have violated two commitments to arbitrate, not just one.

company) to another (here, Swiss Re Life) if certain conditions are met – in this case, the fact

that certain contracts (the reinsurance treaties between Lincoln Barbados and the Irish reinsurer)

have been signed.

Lincoln Barbados and Swiss Re Life entered into the "Put Agreement" (attached as Exh.

E to the Romansic Decl.), on July 27, 2001 to transfer Lincoln Barbados's interest in the Irish

entity, then-named Lincoln Re (Ireland) Limited ("Lincoln Ireland"), and wholly owned by

Lincoln Barbados, to Swiss Re Life. (Compl. ¶ 7.)[5]  Pursuant to the Put Agreement, Lincoln

Barbados had the right, subject to certain conditions, to require Swiss Re Life to pay Lincoln

Barbados $10 million in exchange for the shares of Lincoln Ireland.  *See* Exh. E Put Agreement

Art. I.  On May 30, 2002, Swiss Re Life paid Lincoln Barbados $10 million and assumed control

of Lincoln Ireland, later renaming the company as Swiss Re Ireland.  As part of the Put

Agreement, Swiss Re Life agreed to guarantee the Irish reinsurance company's on-going

performance under the Treaty.[6]  *See* Put Agreement Art. 4.08.  On December 4, 2001, Swiss Re

Life assigned its guaranty obligation under the Put Agreement to its corporate affiliate Swiss Re

Holding, the current Defendant in this action.  (Compl. ¶ 20.)

As referenced above, and as is particularly significant regarding the relief requested

before this Court, at the time the parties negotiated the Put Agreement containing the guaranty,

they specifically agreed that the overall transaction would not close unless a second agreement –

---

[5] Technically speaking, Swiss Re Life was required to transfer its acquisition rights to a non-US company, and did so, transferring those rights to Swiss Re Management Luxembourg, S.A.  *See* Put Agreement § 1.01; *see further* Compl. ¶ 20.  For ease of reference here, we simply refer to the acquiring company as Swiss Re Life.

[6] The Put Agreement provides, in pertinent part: "Purchaser [Swiss Re Life] hereby unconditionally guarantees the prompt performance when due of all obligations of Lincoln Ireland under the [Treaty] . . . Purchaser's liability under this Section 4.08 *shall be subject to any applicable defense of Lincoln Ireland with respect to the [Treaty]*."  Exh. E Put Agreement Art. 4.08 (emphasis added).

the reinsurance treaty whereby Lincoln Barbados ceded 100% of the insurance business at issue to the Irish entity – was in place. *See* Put Agreement Art. 5.01(f). The parties agreed to the parameters of the second agreement (the reinsurance Treaty) as part of the negotiation of the Put Agreement, and attached a form with essential terms (one of which was an arbitration clause) to the Put Agreement. *See* Exh. E Put Agreement List of Exhibits at iv.[7] Thus, for the Put Agreement containing the guaranty to be effective, the parties had to execute a reinsurance treaty containing an arbitration clause to resolve disputes for reinsurance payments due to Lincoln Barbados. Indeed, the Put Agreement extensively refers to the to-be-executed treaty. *See* Exh. E Put Agreement Art. 2.08, 4.08, 5.01(f), List of Exhibits at iv.

In short, then, Swiss Re Holding became a guarantor of the reinsurance Treaty that now exists between Lincoln Barbados and Swiss Re Ireland. As guarantor of the Treaty, Swiss Re Holding's obligation is subject to all defenses to performance that the Irish reinsurance company may have under the Treaty. *A fortiori*, if Lincoln Barbados itself breached the reinsurance Treaty, Swiss Re Holding, *qua* guarantor, has no obligation to Lincoln Barbados. Further, the reinsurance Treaty between Lincoln Barbados and Swiss Re Ireland provides for mandatory arbitration:

> If the Ceding Company [Lincoln Barbados] and the Reinsurer [Swiss Re Ireland] cannot mutually resolve a dispute regarding the interpretation or operation of this Agreement, the dispute shall be decided through arbitration as set forth in Schedule VI.

Exh. C Treaty Arbitration provision at 7, ¶ 1. Lincoln Barbados also agreed in Paragraph 2 of the Arbitration provision that:

---

[7] The Put Agreement, the Treaty, and the June 2001 Treaty of Reinsurance were each attached as exhibits to the Complaint and thus are properly considered by the Court on this motion. *See, e.g.*, *Brass*, 987 F.2d at 150 ("documents attached to the complaint as an exhibit or incorporated in it by reference" are properly considered by the court on a motion to dismiss) (*citing Cortec Indus.*, 949 F.2d at 47-48)).

> In the event that either party refuses to submit to arbitration as required by paragraph 1, the other party may request a United States Federal District court to compel arbitration in accordance with the Federal Arbitration Act.  Both parties consent to the jurisdiction of such court to enforce this article and to confirm and enforce the performance of any award of the arbitrators.

*Id.* ¶ 2.  As noted, the Arbitration provision in the Treaty is relevant here because Lincoln Barbados's claims in this Court are wholly dependent upon the claims already subject to the ongoing arbitration.

On July 26, 2007, Swiss Re Ireland served Lincoln Barbados with a demand for arbitration in Barbados, as is proper pursuant to the Treaty.  That same day, Lincoln Barbados filed this Complaint naming Swiss Re Holding (and not Swiss Re Ireland).[8]  Lincoln Barbados is suing Swiss Re Holding as guarantor for breach of the Put Agreement and for Swiss Re Ireland's alleged failures to comply with its obligations under the Treaty.  (Compl. ¶¶ 27-31.)  In order to defend against Plaintiffs' allegations, Swiss Re Holding will demonstrate that Lincoln Barbados failed to comply with its obligations under its reinsurance agreement with Swiss Re Ireland.  As such, Swiss Re Holding will be forced to litigate the obligations of Swiss Re Ireland (which is not a party to this litigation) – obligations clearly intended to be resolved through arbitration.

More particularly, in its arbitration demand, Swiss Re Ireland has asserted that:  (1) in the formation of the Treaty, Lincoln violated its "duty of utmost good faith" by failing to disclose the exceptionally poor quality of a certain portfolio of policies (the Paul Revere disability income business)[9]; (2) to the extent the Treaty requires Swiss Re Ireland to assume responsibility for

---

[8] Lincoln Barbados served Swiss Re Holding four days after filing.  That service was improper under Fed. R. Civ. P. 12(b)(4) because the Complaint was not served with the exhibits and was therefore incomplete.  The rules of civil procedure require that a summons be served together with a copy of the complaint.  *See* Fed. R. Civ. P. 4(c).  The Court may dismiss on this ground as well.

[9] The duty of "utmost good faith" means a ceding company must act with "'[t]he most abundant good faith; absolute and perfect candor or openness and honesty; the absence of any concealment or deception, however slight.'"  Ostrager & Vyskocil, *supra* note 3, § 3.01 (citation

6

Lincoln Barbados's inability to collect reinsurance proceeds from another third party reinsurer ("London Life"), Lincoln Barbados again violated its duty of utmost good faith by failing to disclose that London Life had previously refused payment because it had itself been misled by Lincoln Barbados as to the performance of the Paul Revere business; and (3) Lincoln Barbados is improperly attempting to exploit a scrivener's error in the Treaty.  (*See* Demand for Arbitration (Exh. A).)  Each of these disputes arise from and relate to the Treaty and therefore are subject to arbitration, as agreed to by the parties.

The arbitration proceedings are already underway.  Lincoln Barbados responded to Swiss Re Ireland's demand on August 3, 2007.  (*See* Response to Demand for Arbitration (Exh. B).)  The parties will name their candidates for arbitrators on or before August 20, 2007.  The arbitration procedure set forth in Schedule VI of the Treaty provides an expeditious resolution of the dispute between Swiss Re Ireland and Lincoln Barbados regarding their obligations under the Treaty.  *See* Exh. C Treaty at Schedule VI.  In fact, the Treaty requires that the arbitration hearing take place no later than six months from the date the third arbitrator is appointed.  *See id*.  The resolution of the arbitration within six months will determine Lincoln Barbados's and Swiss Re Ireland's rights pursuant to the Treaty.  Only then will Swiss Re Holding's obligations, if any, be fixed.

---

omitted).  The duty of utmost good faith imposes an *affirmative obligation* on the cedent to disclose all material aspects of the risk.  Even in the absence of a specific inquiry, the duty *requires* the cedent to place the underwriter or assuming company in the same position as itself, and to give the underwriter or assuming company the same means and opportunity to judge the value of the risks.  *See generally Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268, 280 (2d Cir. 1992); *see also United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.*, 53 F. Supp. 2d 632, 641 (S.D.N.Y. 1999).  Where there has been a breach of the duty of utmost good faith, "the (re)insurer's remedy is avoidance."  O'Neill & Woloniecki, *supra* note 3, at 267.

## IV.    ARGUMENT

This motion is made pursuant to Fed. R. Civ. P. 12(b), including Rules 12(b)(1), (3) and (6).  Rule 12(b) is the proper procedural mechanism to be employed by courts to dismiss actions in which the parties are bound to resolve (or attempt resolution of) their claims in accordance with a contractual grievance procedure, such as an agreement to arbitrate.  *See Tyler v. City of New York*, No. 05CV3620 (SLT) (JO), 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006) (*citing* cases addressing arbitration dismissal or stay under subparts of 12(b) and 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (3d ed. 1998) (comparing different grounds for dismissal of actions containing arbitration clauses)).  Under Rule 12(b), this Court should dismiss this action because the Court lacks subject matter jurisdiction, lacks proper venue, and Plaintiffs' Complaint fails to state a claim upon which relief can be granted.[10]  In the alternative, this Court must, at a minimum, stay this litigation in accordance with the strong federal policy in favor of arbitration.  *See* 9 U.S.C. § 3 (2000) (providing court "shall" stay litigation where issues are properly arbitrable); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").

A.    The Doctrine Of Equitable Estoppel Requires The Court To Dismiss Or, In The Alternative, Stay The Present Action In Favor Of The Arbitration In Barbados.

Under the Second Circuit authority of *Choctaw* and its progeny, this Court is required to dismiss or, in the alternative, stay any action that is based upon a contract that is, in its critical

---

[10] To whatever extent the parties' dispute whether the Treaty's validity is arbitrable, on a motion to stay pending arbitration, "the Court must accept the moving party's version of the facts as true."  *N. Tankers Cyprus Ltd. v. Lexmar Corp.*, 781 F. Supp. 289, 291 (S.D.N.Y. 1992) (*citing Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 70 F.2d 297, 299 (2d Cir. 1934), *aff'd*, 293 U.S. 449 (1935), *overruled in part*, 485 U.S. 271 (1988)).

issues, "intertwined" with an agreement that requires arbitration. *Choctaw Generation L.P. v. Am. Home Assurance Co.*, 271 F.3d 403, 404 (2d Cir. 2001). Because the contract in dispute in the present case is wholly and inextricably intertwined with the arbitrable agreement, and because that agreement is currently the subject of arbitration, *Choctaw* is controlling.

The details of *Choctaw* are virtually indistinguishable from those before this Court. In that case, a power-generation company (Choctaw) entered into a contract containing an arbitration clause with a developer (Bechtel) for the construction of a power-generation facility. *See id.* at 404-05. In a separate agreement, a third party (American Home) guaranteed the contract between the power-generation company and the developer. When operation of the facility was delayed, the power-generation company sued the third party in federal court to enforce the guaranty. *See id.* at 403-04. The third party moved to compel arbitration of the dispute, despite the fact that its contract guaranteeing payment of the company's damages had no arbitration clause. *See id.* at 404.

On appeal, the Second Circuit held that a signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory if the issues which the non-signatory seeks to resolve in arbitration are "'intertwined with the agreement that the estopped party has signed [*i.e.*, the agreement containing the arbitration clause]'." *Id.* at 404 (internal citations omitted). The Court found this test to be amply satisfied in *Choctaw*, where the non-signatory alleged that it had no obligation to compensate the power-generation company for its damages (under the surety agreement) since the power-generation company was itself in breach of the underlying construction contract. *See id.*

Subsequent to *Choctaw*, the courts in this Circuit have re-affirmed the rule that an action must be dismissed or stayed when brought against a non-signatory that has guaranteed an

agreement that is subject to arbitration. Stated more broadly, when a non-signatory's obligations in the federal court action presume the validity of the agreement containing the arbitration clause and the validity of that agreement is the issue that is being arbitrated, the courts will dismiss or stay the federal action in favor of the arbitration. *See, e.g.*, *McCann v. Royal Group, Inc.*, 77 Fed. Appx. 552, 554 (2d Cir. 2003).

The following cases are illustrative of the *Choctaw* line of authority:

In *Israel v. Chabra*, Nos. 04 Civ. 4599, 5859 (DC), 2005 WL 589400 (S.D.N.Y. Mar. 11, 2005), the plaintiffs, former employees of a computer company, alleged that the company had miscalculated the interest rates on bonus payments. Those rates were set forth in an employment agreement which contained an arbitration clause. *See id*. at *1. In a separate agreement, having no arbitration clause, the president of the company (Chabra) guaranteed the bonus payments. *See id*. Though the employees brought suit in district court to enforce the guaranty, the district court, citing *Choctaw*, held that the plaintiffs were estopped from proceeding: "The parties, contracts, and controversies in the instant case are bound up in the same manner as in *Choctaw Generation*: just as American Home [the guarantor] would not be liable to Choctaw if the arbitrator believed Bechtel had not breached the contract, so would Chabra [the guarantor] avoid liability to plaintiffs if the arbitrator determined [the company] had paid plaintiffs in full." *Id*. at *3.

Similarly, in *HG Estate, LLC v. Corporacion Durango, S.A. de C.V.*, 271 F. Supp. 2d 587 (S.D.N.Y. 2003), the plaintiff entered into a stock purchase agreement with the subsidiary of the defendant; in a separate contract, the defendant (parent) guaranteed the stock purchase agreement with a promissory note and an agreement to indemnify the plaintiff for its losses. While the stock purchase agreement contained an arbitration clause, the contract guaranteeing the stock

purchase agreement did not. *See id.* at 590-91.  The plaintiff sued under the latter. *See id.* at 590.  Because the parent's obligations under the guaranty presupposed the validity of the underlying stock purchase agreement and because the issue of the validity of the stock purchase agreement was being determined in the arbitration, the Court held that the case was indistinguishable from and therefore controlled by *Choctaw*. *See id.* at 594-95.

Yet again, in *Chase Mortgage Co.-West v. Bankers Trust Co.*, No. 00 CIV. 8150 (MBM), 2001 WL 547224, at *2-3 (S.D.N.Y. May 23, 2001), the defendant bank filed a third-party complaint for indemnity against a mortgage company as well as its non-signatory parent who had guaranteed its subsidiary's performance. *See id.* at *1.  This Court found that despite the fact that the parent company had not signed the arbitration agreement, the non-signatory parent had the right to compel arbitration because the claims against it "'ar[ose] out of and relate[d] directly to' the underlying [mortgage] agreement." *See id.* at *2 (*quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757-58 (11th Cir. 1993)).

The present case is structurally identical to – and therefore controlled by – that line of authority that begins with *Choctaw* and continues through *Israel*: the defendant, Swiss Re Holding, was sued in federal district court under a contract in which the defendant guaranteed an agreement between the plaintiff (Lincoln Barbados) and a third party (Lincoln Ireland, now Swiss Re Ireland); the agreement between the plaintiff (Lincoln Barbados) and the third party (Lincoln Ireland, now Swiss Re Ireland) contained an arbitration provision; and arbitration had begun over the issue whether plaintiff had breached its contract to the third party.  In both this case and *Choctaw*, the issue in arbitration – whether the plaintiff breached its obligations under its separate agreement with the third party – would dispose of the issue before the district court, *i.e.*, the guarantor's obligation to the plaintiff.

Subsequent decisions in this Circuit have identified further factors which, either individually or together, signal a degree of inter-relatedness that mandates estoppel. These include, though are not limited to, the following:  the non-signatory is an affiliate of the party in arbitration;[11] the party that has initiated the action in district court is using the court to preempt the arbitration;[12] the two agreements were executed contemporaneously;[13] and the arbitration agreement is referred to in the other contract.[14]

These factors make a dismissal or stay in the case at bar all the more compelling, for not only is this case structurally identical to *Choctaw*, but this case also involves those additional indicia of estoppel inter-relatedness that have been recognized by the courts post-*Choctaw*.  First, the non-signatory Defendant (Swiss Re Holding) is an affiliate of Swiss Re Ireland, the party in arbitration.  Second, given that Lincoln Barbados has made no demand on Swiss Re Holding for payment under the Put Agreement (a pre-condition for a finding of breach), and did not sue Swiss Re Ireland as reinsurer, it is more than apparent that Lincoln Barbados's action in federal court has no motive other than to use this Court as a means of subverting the arbitration.  Third, the two contracts – the Put and the Treaty – were negotiated at the same time and as part of the same transaction.

---

[11] *Astra Oil Co., v. Rover Navigation, Ltd.*, 344 F.3d 276, 281 (2d Cir. 2003).

[12] *Smith/Enron Cogeneration L.P. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (*citing IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996) (Posner, C.J.) ("where a party to an arbitration agreement attempts to avoid that agreement by suing a 'related party with which it has no arbitration agreement, in the hope that the claim against the other party will be adjudicated first and have preclusive effect in the arbitration. Such a maneuver should not be allowed to succeed . . . .'")).

[13] *Alemac Ins. Servs., Inc. v. Risk Transfer, Inc.*, No. 03 Civ. 1162 (WHP), 2003 U.S. Dist. LEXIS 26764, at *14 (S.D.N.Y. Aug. 26, 2003).

[14] *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 211 (2d Cir. 2005).

Finally, the Treaty is expressly referred to in the Put Agreement. *See* Exh. E Put Agreement Art. 2.08, 4.08, 5.01(f), and List of Exhibits at iv. In fact, the parties negotiated and agreed to the form of the Treaty as part of the negotiation of the Put Agreement. Moreover, Lincoln Barbados recognized when it entered into the Put Agreement that disputes regarding the reinsurance business would be subject to arbitration under the Treaty, which the parties would, per agreement, subsequently execute. And, entry into the Treaty was a condition precedent to the Put Closing. *See* Exh. E Put Agreement Art. 5.01(f).

    B.    <u>This Court Should Dismiss Or, In The Alternative, Stay The Present Action Pursuant To Its Inherent Power To Promote Judicial Economy Where The Issues In This Litigation Are Pending In Arbitration.</u>

A second, independent, reason why Defendant's motion should be granted is that district courts should use their inherent authority to dismiss or stay duplicative, wasteful, disingenuous litigation. The Second Circuit recognizes the inherent powers of district courts to regulate their dockets pending resolution of another judicial, administrative or arbitral proceeding where that proceeding may dispose of or narrow the issues to be resolved in the court action. *See Goldstein v. Time Warner New York City Cable Group*, 3 F. Supp. 2d 423, 437-38 (S.D.N.Y. 1998) (*citing Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)); *see also New Phone Co. v. City of New York*, 488 F.3d 96, 98 (2d Cir. 2007) (stating court may dismiss or stay duplicative suit). In staying or dismissing the litigation, "the potential for conflicting results and attendant costs entailed in different proceedings may be obviated, and the outcome of issues adjudicated in the arbitration may be applied to simplify or entirely resolve matters still pending before the court." *DaPuzzo v. Globalvest Mgmt. Co.*, 263 F. Supp. 2d 714, 741 (S.D.N.Y. 2003). The general objective is to avoid duplicative litigation, thereby fostering judicial economy and comprehensive disposition of litigation. *See In re Quigley Co.*, 361 B.R. 723, 742-43 (Bankr. S.D.N.Y. 2007); *James v. AT&T Corp.*, 334 F. Supp. 2d 410, 411 (S.D.N.Y. 2004). A suit is

13

considered duplicative if the "claims, parties and available relief do not significantly differ between the two actions." *N. Assurance Co. v. Square D Co.*, 201 F.3d 84, 89 (2d Cir. 2000) (internal citations and quotations omitted).

This court has used its inherent authority in situations very similar to the case at bar. In *Orange Chicken*, the defendant non-signatories moved to stay litigation between themselves and the plaintiff, pending the outcome of arbitration between the plaintiff and a third-party. *See Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *8-9 (S.D.N.Y. Dec. 19, 2000). More specifically, a plaintiff-merchandiser filed false advertising claims against defendant-competitors, claiming exclusive control over the designs of a popular designer, third-party defendant. *See id.* at *2. Concurrently, the third-party defendant filed for arbitration, seeking a declaration that her agreement with the plaintiff-merchandiser had been violated and, as a result, terminated. *See id.* at *3. The court found a stay pursuant to the inherent powers of the court to be "particularly appropriate" where "the claims in the instant action and those being adjudicated in arbitration arise out of the same series of alleged acts" and "[the arbitration] will likely provide significant insight into, if not actually resolve, the claims asserted in this action." *Id.* at *9.

For a stay under the court's inherent power, the movant must establish that: (1) there are issues common to the arbitration and the courts, and that those issues will finally be determined by the arbitration; (2) movant will not subsequently attempt to hinder the arbitration; (3) the arbitration will be resolved within a reasonable time; and (4) such delay that may occur will not cause undue hardship to the non-movant. *See Orange Chicken*, 2000 WL 1858556, at *9 (*citing Am. Shipping Line, Inc. v. Massan Shipping Indus.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995); *Gen.*

*Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 891 F. Supp. 946, 954-55

(S.D.N.Y. 1995)).

This test is established here. First, the issues here are closely intertwined and resolution

of the arbitrable issues would obviate the litigation entirely. Second, movant has no interest in

hindering arbitration that has been initiated by its affiliate. Third, arbitration would assuredly

conclude more expeditiously than litigation before this Court – in fact, the agreement calls for

arbitration in six months' time. Further, arbitration is strongly favored in insurance cases

because the arbitrators often have "specialized knowledge of the intricacies of . . .

comprehensive and complex agreement[s]." *See In re Quigley*, 361 B.R. at 744. Finally, non-

movant will not suffer undue hardship; rather Lincoln Barbados will enjoy the benefits of

arbitration relative to litigation and has already answered and engaged Swiss Re Ireland in

Barbados.

C.    This Court Must Dismiss Or, In The Alternative, Stay The Present Action
      Pursuant To § 3 Of The Federal Arbitration Act.

Under FAA § 3, a court may also grant a defendant's motion to dismiss or stay the case

in favor of arbitration. Section 3 of the FAA requires a federal district court to stay a suit against

a non-signatory where an issue – here, the pivotal issue – is encompassed within an agreement

containing an arbitration clause. *See* 9 U.S.C. § 3 (2000) ("[T]he court in which such suit ["upon

any issue referable to arbitration"] is pending . . . shall . . . stay the trial of the action until such

arbitration has been had in accordance with the terms of the agreement . . . .").

In *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 266-67

(S.D.N.Y. 2005) ("*In re Currency*"), a putative class of credit cardholders alleged a price-fixing

conspiracy against bank issuers of credit cards and their parent corporations. *See id.* at 243.

While certain class members were bound by arbitration agreements with the issuing banks, other

class members were not. *See id.* at 245. Analyzing Second Circuit precedent, the court held that the non-signatory plaintiffs were estopped by § 3 from litigating in federal court because "the issues regarding the non-signatories were 'intertwined' with the contract through which the plaintiffs had agreed to arbitrate claims against their counter-signatories." *Id.* at 265. The Court distinguished earlier Second Circuit decisions addressing § 3 on the grounds that the issues in those cases were not sufficiently inter-related and therefore did not trigger equitable estoppel. *See id.* at 266-67 (*distinguishing Citrus Mktg. Bd. v. J. Lauritzen A/S*, 943 F.2d 220, 225 (2d Cir. 1991) and *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964)).

*In re Currency* is on all fours with this case. Plaintiffs allege Swiss Re Holding is liable as guarantor for the obligations of Swiss Re Ireland under the Treaty; Swiss Re Holding's defense, *qua* guarantor, is that it is not liable because the Treaty is voidable owing to Plaintiffs' breach of its duty of utmost good faith under the Treaty; and whether Plaintiffs breached their duty to Swiss Re Ireland under the Treaty is the central issue in the arbitration.

Moreover, § 3 permits a court to dismiss the action where, as here, "'all of the issues raised in the Complaint must be submitted to arbitration . . . .'" *Spencer-Franklin v. Citigroup/Citibank N.A.*, No. 06 Civ. 3475 (GBD) (GWG), 2007 WL 521295, at *4 & n.2 (S.D.N.Y. Feb. 21, 2007) (quoting citation omitted) (*citing, inter alia, Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("'Notwithstanding the terms of § 3, . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable'."); *Green v. Ameritech Corp.*, 200 F.3d 967, 972-73 (6th Cir. 2000); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998), *aff'd*, 191 F.3d 8 (1999); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 636 (9th Cir. 1988); and *citing Salim Oleochemicals v. M/V*

*Shropshire*, 278 F.3d 90 (2d Cir. 2002) (assuming dismissal was permissible)).[15]  In this case,

with respect to the duty of utmost good faith, Swiss Re Ireland contends in its arbitration demand

that Lincoln Barbados breached that duty by failing to disclose and, in fact, actively suppressing,

material information regarding the performance of a block of disability income business written

by the Paul Revere Company and reinsured by Lincoln Barbados in the first instance, and failing

to reveal facts relating to the assumption by Swiss Re Ireland of the collection risk Lincoln

Barbados had as to Lincoln Barbados's separate cover of a portion of the Paul Revere business

given by London Life.  Unbeknownst to Swiss Re Ireland, London Life had refused to pay

Lincoln Barbados reinsurance proceeds on the book of policies, following London Life's

strenuous assertions that it also had been misled as to the performance of the Paul Revere

business by Lincoln Barbados.  These assertions, if proven true, would vitiate the reinsurance

obligations of Swiss Re Ireland as to the disputed books.  It should be noted that, on August 3,

2007, Lincoln Barbados served its answer to Swiss Re Ireland's demand for arbitration, and thus

consented to have that issue decided in the arbitration in Barbados.  Under these circumstances,

Second Circuit law under § 3 of the FAA mandates a dismissal or stay.

A dismissal or stay is also necessitated because permitting this litigation to continue

threatens to harm Swiss Re Ireland's right to a meaningful arbitration.  If this case is not

dismissed or stayed, determinations by this Court as to issues regarding the enforceability of the

Treaty could deprive Swiss Re Ireland of a meaningful and prompt opportunity to argue that

Lincoln Barbados breached its duty of utmost good faith.  *See Waste Mgmt., Inc. v. Residuos*

*Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir. 2004) (staying litigation in part

---

[15] Report and Recommendation dismissing action adopted by *Spencer-Franklin v. Citigroup/Citibank N.A.*, No. 06 Civ. 3475 (GBD), 2007 WL 1052451 (S.D.N.Y. Apr. 5, 2007) (Daniels, J.).

because it could "'substantially impact'" arbitration "[g]iven . . . the ICC arbitrator would necessarily be strongly influenced to follow the court's determination."); *McCowan v. Sears, Roebuck & Co.*, 908 F.2d 1099, 1107 (2d Cir. 1990) ("If *McCowan II* were allowed to proceed . . . Dean Witter's right to arbitrate the federal claims . . . would be impaired since any issues determined against Dean Witter in court proceedings . . . could have collateral estoppel effect on the arbitration."); *HG Estate, LLC v. Corporacion Durango, S.A. de C.V.*, 271 F. Supp. 2d 587, 595 (S.D.N.Y. 2003) (finding as in *Choctaw* that to permit litigation to proceed could affect the integrity of arbitration because of determinations as to liabilities).

Given the foregoing broad authority, and its direct application to the facts of this case, a dismissal or stay of this action is required.

## V.    CONCLUSION

For all of the reasons set forth above, Defendant Swiss Re Life & Health America

Holding Company requests that the Court enter an order dismissing or staying this action.


Dated:    New York, New York
          August 20, 2007

STEPTOE & JOHNSON LLP


By: _____

Michael Rips (MR-0810)
Lara E. Romansic (LR-9236)
Justin B. Perri (JP-6408)
750 Seventh Avenue, Suite 1900
New York, NY  10019
tel:  (212) 506-3900
fax:  (212) 506-3950

Of Counsel:

John L. Jacobus
Jon T. Neumann
Hillary C. Jarvis
Anthony A. Onorato
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
tel:  (202) 429-3000
fax:  (202) 429-3902

*Attorneys for Defendant*
*Swiss Re Life & Health America Holding Company*

19